**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THOMAS JOHN BEYLIK,

      Petitioner-Appellant,

v.

AL ESTEP, Warden,

      Respondent-Appellee.

No. 09-1528

(D.C. No. 07-CV-02710-WYD)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **TACHA, BRISCOE,** and **O'BRIEN**, Circuit Judges.

      Thomas Beylik, a Colorado state prisoner proceeding pro se, seeks a certificate of

appealability (COA) in order to challenge the district court's denial of his petition for writ

of habeas corpus seeking relief pursuant to 28 U.S.C. § 2241. Because Beylik has failed

to satisfy the standards for the issuance of a COA, we deny his request and dismiss the

matter.

I

      In April 2005, Beylik pled guilty in Colorado state court to "Criminal Attempt

Sexual Assault on a Child - Victim less than 15 - Position of Trust," and was sentenced to

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

"a prison term of three years to life, with the possibility of an indeterminate period of parole of from ten years to life, with a requirement that he participate in an intensive supervision parole program, register as a sex offender and have no contact with children under 18." ROA, Vol. 1 at 56. Upon beginning his term of imprisonment, Beylik was placed by the Colorado Department of Corrections (CDC) in its Sex Offender Treatment and Monitoring Program (SOTMP).

In June 2007, Beylik filed with the CDC an offender grievance form alleging that his wife had "recieved [sic] private case file information from another group members['] file from SOTMP," thereby "violating said members['] confidentiality contract and [Beylik's]."[1] Id. at 68. The grievance form further alleged that "SOTMP [wa]s . . . in a violation of breach of contract with . . . Beylik . . . ." Id. The CDC researched the matter, interviewed Beylik, and ultimately sent him a letter on July 3, 2007, informing him that (a) the grievance procedure could "not be used to seek review of classification, sex offender designation, or sentence computation," (b) his therapists had been made aware of the issue and would address it, (c) he "only need[ed] to follow any previous directions

_____

[1] Beylik's pleadings in the instant case provided more details regarding the alleged incident. According to those pleadings, Beylik and other inmates in the SOTMP program at the CDC's Fremont Correctional Facility (FCF) "were coerced into submitting . . . letter[s] . . . discribing [sic] details of their crime and intimate details partaining [sic] to their relationship with outside family or friends (in the plaintiff(s) case his spouse), along with a self addressed stamped envelope . . . ." ROA, Vol. 1 at 132 (emphasis in original). "Shortly after surrendering this private information," Beylik's wife "recieved [sic] (in [Beylik's] self addressed stamped envelope) personal information from another non-disclosed convicted sex offender." Id. According to Beylik, the therapists running the SOTMP program at FCF "failed to find [Beylik's] letter" but nevertheless "claim[ed] it never went out." Id.

and/or assignments from [his] group and continue to follow the Treatment Contract, to carry on in [his] present opportunity in [his] treatment group," and (d) "[t]he decision to continue in treatment . . . w[ould] continue to be [his]." Id. at 66.

Beylik, dissatisfied with the response to his administrative grievance, filed with the Colorado State Board of Parole a letter that was construed as an application for parole. Id. at 71, 133. In doing so, Beylik purportedly believed he could be released from confinement and allowed "to obtain treatment from home . . . ." Id. at 133. On July 30, 2007, Beylik met with the Board's Vice President, Curtis Devin. Id. at 104. At the conclusion of the meeting, Devin denied Beylik's application and "deferred Beylik's next parole hearing until August 2008."[2] Id. at 105. Devin's "decision was based on aggravating factors/inadequate time served, public risk, [the fact that] Beylik's assessment of being a sexually violent predator was currently in progress," and the need for "continued correctional treatment." Id. Although Beylik attempted to administratively appeal that determination, he was informed by the Board of Parole "that parole application hearings [we]re not appealable." Id. at 64.

On December 28, 2007, Beylik filed a pro se petition for writ of habeas corpus, as well as a completed application form for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 11, 2008, the magistrate judge assigned to the case issued an order

---

[2] According to the record, the Board of Parole reviewed Beylik's case in late July 2008, and concluded he needed continued correctional treatment. ROA, Vol. 1 at 174. The Board of Parole next reviewed Beylik's case on August 4, 2009, and deferred his next parole hearing until February 2010. Id. at 274.

notifying Beylik that his pleadings were being construed "as filed pursuant to 28 U.S.C. § 2241" because Beylik was "challenging the denial of his parole." ROA, Vol. 1 at 41. The order further directed Beylik "to amend his Application and to file his challenges to the execution of his sentence on a § 2241 Court-approved application form." Id.

On February 27, 2008, Beylik, as directed by the magistrate judge, filed a completed application form for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Id. at 50. On April 4, 2008, Beylik filed a "Second Amendment" to his application. Id. at 89. Thereafter, Beylik proceeded to file a host of pleadings, the majority of which, as the district court ultimately noted, were incomprehensible.

On October 15, 2009, the district court issued an order denying Beylik's request for federal habeas relief and dismissing the case with prejudice. Id. at 277. In doing so, the district court concluded that "the only claim that properly [wa]s before [it] [wa]s . . . Beylik's challenge of the denial of his parole request . . . ."[3] Id. With respect to that claim, the district court "conclude[d] that the Parole Board's decision denying . . . Beylik's application for parole was not arbitrary, capricious, or an abuse of discretion . . . ." Id. at 282. In reaching this conclusion, the district court noted that "[t]he United States Constitution itself does not create a protected liberty interest in a prisoner's release prior

_____

[3] Consistent with the magistrate judge's initial ruling in the case, the district court concluded that, to the extent Beylik was "assert[ing] non-habeas claims, specifically conditions of confinement claims," those "more properly [we]re presented to th[e] Court in a separate 42 U.S.C. § 1983 action." Id. at 279. Likewise, the district court concluded that, to the extent Beylik was seeking to challenge "the validity of his conviction and sentence," such claims "more properly [we]re raised in an action filed pursuant to 28 U.S.C. § 2254." Id.

to the expiration of a valid sentence." Id. at 283. Further, the district court noted that Colorado state law did not entitle a prisoner to parole prior to completion of the incarceration period ordered by the sentencing court. Id. Additionally, the district court noted that "no Colorado law creates any limits on the procedures to be used by the Parole Board when it considers [a] parole application," and "[t]he decision to grant parole or absolute release to an inmate incarcerated for an indeterminate sentence under [Colorado's] Sex Offender Lifetime Supervision Act is vested within the sound discretion of the . . . Parole Board." Id. (internal citations omitted). Thus, the district court concluded, "the State of Colorado ha[d] not created a constitutionally protected liberty interest in the granting of parole, and . . . Beylik [wa]s not entitled to the Wolff[ v. McDonnell, 418 U.S. 539 (1974),] due process protections in [his] parole proceedings . . . ." Id. at 284. Finally, the district court concluded that the reasons cited by the Board of Parole for rejecting Beylik's application for parole (i.e., the existence of aggravating factors, inadequate time served at the time of the application, public risk, and the need for continued correctional treatment) were sufficient to rebut any claim that the Board's denial of parole was arbitrary or otherwise constitutionally impermissible.

Judgment in the case was entered on October 16, 2009. Beylik subsequently filed a pleading entitled "TAKE JUDICIAL NOTICE: REQUEST," id. at 288, which the district court construed as a misdirected notice of appeal. Id. at 4. On December 2, 2009, the district court issued an order denying Beylik a COA. Id. at 294. Beylik has since renewed his request for COA with this court.

State prisoners may appeal the denial of a § 2241 petition only if a COA is issued. See 28 U.S.C. § 2253(c)(2); Montez v. McKinna, 208 F.3d 862, 869 (10th Cir. 2000). A COA will issue in such a case only if the state prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make this showing, the state prisoner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations omitted).

Having carefully examined Beylik's appellate pleadings and the record on appeal, we conclude he has failed to establish his entitlement to a COA in this case. Beylik's amended and second amended applications for federal habeas relief focused on the CDC's denial of his administrative grievance (which, as noted, sought immediate release from confinement) and the Board of Parole's subsequent decision to deny him parole, and thus were properly characterized by the district court as being brought pursuant to 28 U.S.C. § 2241. See Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000). With respect to the CDC's denial of his administrative grievance, Beylik clearly had no legitimate expectation that the alleged disclosures of confidential information from the SOTMP, though perhaps unfortunate, would entitle him to release from confinement. Contrary to the allegations in Beylik's numerous pleadings, he is not in confinement as a result of any "contract" he may have signed with the CDC regarding its SOTMP program;

rather, he is serving a sentence of imprisonment duly imposed by a Colorado state court. Thus, these allegations do not state a legitimate claim for federal habeas relief (which is perhaps why the district court chose not to address the allegations as an independent claim), and Beylik is not entitled to a COA with respect to these allegations. Turning to Beylik's due process challenge to the Board of Parole's decision to deny him parole and defer him for a later parole hearing, reasonable jurists could not debate whether this claim should have been resolved in a different manner by the district court. To possess an interest protectable under the Due Process Clause, a person must "'have a legitimate claim of entitlement to it.'" Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). As the district court explained in detail in its order denying Beylik federal habeas relief, the grant of parole is wholly discretionary under Colorado's statutory parole scheme and thus does not create a legitimate expectation of release on the part of Colorado state prisoners. Id. at 10-11. In other words, the scheme does not create a liberty interest entitled to due process protection under the United States Constitution. Id. at 11 ("That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained.") (emphasis in original).

Beylik's request for a COA is DENIED, all pending motions are DENIED, and the matter is dismissed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge