**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 13, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSHUA LAMONT SUTTON,

    Petitioner - Appellant,

v.

JASON MIKESELL, Sheriff,

    Respondent - Appellee.

No. 19-1479
(D.C. No. 1:19-CV-02008-LTB-GPG)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

The writ of habeas corpus vindicates inmates who are held in custody in violation of the United States Constitution. 28 U.S.C. § 2241(c)(3). Alleging that he is such an inmate, Joshua Sutton argues that the Colorado Parole Board (Board) contravened his Fourteenth Amendment right to due process by deferring his conditional grant of discretionary parole after it received false reports that disqualified him for immediate release. As a remedy, Sutton asks us to credit the additional time he spent incarcerated due to this alleged violation to reduce the three-year mandatory period of parole that the sentencing judge included as part of his

_____

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentence. Because Sutton's request presents a live controversy concerning a redressable injury, we disagree with the district court that his § 2241 petition is moot. That said, because Sutton has no property or liberty interest in receiving discretionary parole, he cannot show that the Board deprived him of any right protected by the Fourteenth Amendment by deferring his parole date. Accordingly, we deny him a certificate of appealability.

## BACKGROUND

On May 3, 2013, the District Court of Pueblo County, Colorado, sentenced Sutton to ten years in prison after he was convicted of second-degree assault. *Sutton v. Burtlow*, No. 18-cv-01815-RM, slip op. at 1–2 (D. Colo. Jan. 07, 2019). As part of that sentence, the court ordered that Sutton serve a mandatory period of parole following his release from incarceration. That mandatory-parole period was not unique to Sutton; in Colorado, all offenders who are convicted for certain felonies are required, by statute, to serve a predefined period of mandatory parole. *See* Colo. Rev. Stat. Ann. § 18-1.3-401(1)(a)(V)(A) (West 2020); *People v. Johnson*, 13 P.3d 309, 313 (Colo. 2000) ("Mandatory parole attaches to an offender's sentence any time a trial court sentences the offender to the [department of corrections], whether the sentence is an initial sentence or a resentence."). Because Sutton's offense qualifies as a Class Four crime under Colorado law and he was convicted between July 1993 and July 2018, his mandatory period of parole amounts to three years. *See* Colo. Rev.

2

Stat. Ann. § 18-1.3-401(1)(a)(V)(A) (West 2020); Response to Order to Show Cause, *Sutton v. Burtlow*, No. 18-cv-01815-RM (D. Colo. Jan. 07, 2019), ECF No. 17-1.[1]

According to Sutton, on "about 8-9-2017," "the Colorado Board of Parole granted [him] early [discretionary] parole pending approval of bed space." R. at 5. But after doing so, the Board "received reports that [he] had been denied all bed spaces and had been convicted of a Disciplinary Writeup (that were both False)." *Id.* Sutton alleges that the Board failed to verify whether the reports were true and "took [his] pending parole." *Id.*

The Board soon changed course, Sutton claims, because it then received new reports clarifying that, in fact, Sutton "hadn't been denied bed space[]." *Id.* What is more, Sutton had not "been convicted of a Disciplinary Writeup." *Id.* Thus, the Board granted Sutton discretionary parole on October 22, 2018.

On July 17, 2018, before the Board paroled Sutton, he filed a § 2241 petition in the United States District Court for the District of Colorado. *Sutton*, slip op. at 1. He claimed that the Board had violated his Fourteenth Amendment right to due process and abused its discretion by deferring his discretionary parole. *Id.* at 2.

---

[1] We take judicial notice of facts contained in litigation documents from Sutton's earlier habeas petition that are not in the record before us. Fed. R. Evid. 201(a)–(d); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citations omitted)).

The district court never reached those issues. It reasoned that because the Board paroled Sutton on October 22, 2018, his habeas petition was moot. *Id.* at 5. As a result, the court concluded that it lacked subject-matter jurisdiction to resolve Sutton's petition and therefore dismissed it without prejudice. *Id.* at 5–6.

On June 24, 2019, the Board revoked Sutton's discretionary parole because he had violated his conditions of supervision. So a few weeks later, on July 11, 2019, Sutton filed a second § 2241 petition. This time, Sutton alleged that the Board had violated his due-process rights by failing to credit toward his mandatory period of parole the additional time he spent in prison while the Board deferred his discretionary parole from August 2017 to October 2018.

Obtaining the case by referral from the district court, the magistrate judge first explained that the question of mootness needed to be reconsidered as "a threshold issue." R. at 46. (internal quotation marks omitted) (quoting *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996)). Even though Sutton's circumstances had changed (he was now incarcerated), the magistrate judge concluded that the mootness problem was unchanged: "Mr. Sutton['s] reincarceration in June 2019 does not alter the determination of mootness made in his previous case." *Id.* As grounds, the magistrate judge reasoned that Sutton had no right to have his mandatory-parole term recalculated—crediting his time spent in prison while the Board deferred his parole between August 2017 and October 2018—because his mandatory-parole term would not begin until he had completed his ten-year prison sentence. *Id.* at 47 ("To the extent Applicant's sentence includes a three-year

4

mandatory parole term, the mandatory parole term has not yet commenced."). The magistrate judge noted that Sutton could not "discharge" his "second-degree assault conviction [until] June 16, 2021," so he reasoned that any parole the Board granted before that date was merely discretionary parole, not mandatory parole. *Id.* at 47–48. As a result, the magistrate judge concluded that the "Board's August 2017 decision to defer discretionary parole until October 2018 fails to present a live case or controversy under Article III of the Constitution" and recommended that the district court dismiss Sutton's petition for lack of subject-matter jurisdiction. *Id.* at 48.

Sutton filed a timely objection to the magistrate judge's report and recommendation. Without performing any independent analysis, the district court accepted the magistrate judge's report and recommendation, dismissing Sutton's § 2241 petition as moot. Sutton now seeks a certificate of appealability to challenge that ruling.[2]

---

[2] On November 14, 2019, the district court entered its order and judgment. Because Sutton did not file any post-judgment motions, he had until December 14, 2019, to file his notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A), (a)(4)(A). December 14 fell on a Saturday, so the deadline was extended until December 16, 2019. Fed. R. Civ. P. 6(a)(1)(C); Fed. R. App. P. 26(a)(1)(C). The Four Mile Correctional Center, where Sutton is housed and from where he mailed his notice, stamped the envelope for Sutton's notice of appeal on December 15, 2019. And the envelope shows that postage had been paid. Thus, Sutton's appeal is timely. *See* Fed. R. App. P. 25(a)(2)(A)(iii) (stating that a nonelectronic filing "is timely if it is deposited in the institution's internal mail system on or before the last day for filing and" the inmate provides "evidence (such as a postmark or date stamp) showing that the paper was so deposited and that postage was prepaid").

## DISCUSSION

### I.     The Certificate-of-Appealability Standard

State prisoners may appeal final district court orders resolving their § 2241 petitions only if "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A) (2020); *Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000). Without a certificate of appealability, we "lack jurisdiction to rule on the merits of appeals from [state] habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). So before Sutton can invoke our jurisdiction to decide the merits of his appeal, he must first show that he is entitled to a certificate of appealability.

Under 28 U.S.C. § 2253(c)(2), Sutton is entitled to a certificate of appealability if he "has made a substantial showing of the denial of a constitutional right." Such a substantial showing is insufficient standing alone, however, when a district court dismisses a habeas petition on procedural grounds. In that case, a habeas petitioner must also show a debatable procedural error:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the district court concluded that it lacked subject-matter jurisdiction because Sutton's petition was moot; hence it dismissed Sutton's petition on procedural rather than substantive grounds. *See, e.g.*, *United States v. Springer*, 875

6

F.3d 968, 982–83 (10th Cir. 2017) (describing a district court's lack of subject-matter jurisdiction as a "plain procedural bar" (internal quotation marks and citation omitted)).[3] The Court has instructed that when a district court's decision rests on a procedural bar, courts of appeals should adhere to the canon of constitutional avoidance, "resolv[ing] procedural issues" before constitutional issues. *Slack*, 529 U.S. at 485 (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

Thus, we will first determine whether jurists of reason would debate the correctness of the district court's mootness ruling. If they could, we will then determine whether Sutton has made a substantial showing of a denial of his right to due process under the Fourteenth Amendment. In considering these questions, we will liberally construe Sutton's pro se petition but refrain from "act[ing] as his advocate." *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

---

[3] Often, the exhaustion-of-state-remedies requirement is a plain procedural bar in these cases. But in Colorado, a Board's discretionary decision "is not subject to judicial review." *White v. People*, 866 P.2d 1371, 1373 (Colo. 1994). Thus, after the Board denies parole, the proper procedure to challenge that decision is for an individual to file a writ of habeas corpus in federal district court. *Mahn v. Gunter*, 978 F.2d 599, 600 n.3 (10th Cir. 1992) (citing *Schuemann v. Colo. State Bd. of Adult Parole*, 624 F.2d 172, 173 (10th Cir. 1980)). At its core, Sutton's challenge here is directed at the Board's discretionary decision to defer his parole, a decision that he says deprived him of property and liberty interests. *See discussion infra* Part III. As a result, the exhaustion requirement does not bar Sutton's § 2241 petition.

## II.     The Correctness of the District Court's Procedural Ruling Is Debatable.

By accepting the magistrate judge's report and recommendation, the district court adopted the magistrate judge's conclusion that Sutton's § 2241 petition was moot. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1159 (10th Cir. 2019) (internal quotation marks and citation omitted). We have explained that "[t]he crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (internal quotation marks omitted) (quoting *Brown v. Buhman*, 822 F.3d 1151, 1165–66 (10th Cir. 2016)). Mootness renders a case nonjusticiable and deprives us of subject-matter jurisdiction, because "[i]n a moot case, a plaintiff no longer suffers a redressable 'actual injury.'" *Id.* (quoting *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015)).

In the parole context, we have explained that a grant of parole moots a prisoner's challenge to a parole board's "determinations that delayed his parole date"—if parole has already been granted, an order granting parole will have no real-world effect. *Vandenberg v. Rodgers*, 801 F.2d 377, 378 (10th Cir. 1986) (per curiam) (citations omitted). As an exception to this general rule, parolees may overcome a mootness determination by showing they face "collateral consequences," the grant of parole notwithstanding. *See id.* (citations omitted); *see also Dumas v.*

*U.S. Parole Comm'n*, 397 F. App'x 492, 494 (10th Cir. 2010) (unpublished) ("Because Mr. Dumas has already been released on parole, he bears the burden of demonstrating that he is subject to continuing 'collateral consequences' as a result of th[e] postponement [of his parole date]." (citations omitted)). Along these lines, we have stated that an appeal is not moot, even if a habeas petitioner has "been released from custody," when a favorable decision "would affect the duration of [a] distinct probationary period." *See Aragon v. Shanks*, 144 F.3d 690, 691–92 & n.4 (10th Cir. 1998).[4]

The magistrate judge's mootness conclusion hinged on two propositions: (1) "[Sutton] was released on discretionary, not mandatory, parole," and (2) that "any period of mandatory parole has not yet commenced." R. at 47–48. According to the magistrate judge, the time Sutton spent awaiting discretionary parole while the Board deferred its discretionary-parole decision—fourteen months—could not affect his period of mandatory parole, because that period would not begin until after Sutton had completely discharged his sentence and reached his "mandatory release date"—June 16, 2021. *Id.* at 48 (internal quotation marks and citation omitted). Though the magistrate judge was correct that Sutton was released on discretionary parole, the

---

[4] Though Colorado classifies its mandatory post-confinement-supervision period as mandatory parole—not probation—we have recognized that "[r]egardless, violation of the terms of parole, probation, or Colorado's mandatory parole can lead to the re-incarceration of the parolee/probationer." *Gwinn v. Reid*, 43 F. App'x 219, 221 n.1 (10th Cir. 2002) (unpublished).

magistrate judge incorrectly concluded that Sutton's mandatory period of parole did not commence upon the Board's grant of discretionary parole.

Under Colorado law, a prisoner who is sentenced for a Class Four felony is eligible for discretionary parole after having "served fifty percent of the sentence imposed upon such person, less any time authorized for earned time." Colo. Rev. Stat. Ann. § 17-22.5-403(1) (West 2020). If the prisoner "is incarcerated for an offense committed on or after July 1, 1993," the prisoner can apply to "the state board of parole" for discretionary parole. *Id.* § 17-22.5-403(7)(a). Considering (among other things) the eleven factors listed in section 17-22.5-404(4)(a)(I)–(XI), the Board then determines whether "the totality of the circumstances" warrants a prisoner's release for discretionary parole. *Id.* § 17-22.5-404(4)(a). If so, the Board "shall set the length of the period of parole at the mandatory period of parole established in section 18-1.3-401(1)(a)(V) or 18-1.3-401.5(2)(a)." *Id.* § 17-22.5-403(7)(a).[5] And if a parolee violates the conditions of parole, the Board may "revoke the parole and order the return of the offender to a place of confinement designated by the executive director for any period of time up to the period remaining on such person's mandatory period of parole." *Id.* § 17-22.5-403(8)(a).[6]

---

[5] Section 17-22.5-403(7)(a) includes exceptions for certain offenses described in "section 17-2-201(5)(a), (5)(a.5), and (5)(a.7)," none of which are at issue here.

[6] So when the Board revoked Sutton's parole in June 2019, his original three-year mandatory parole term would not have been replaced by some new parole term commencing in 2019.

10

Thus, under these statutes, when the Board granted Sutton discretionary parole, his period of mandatory parole immediately commenced and was fixed at three years. This procedure complies with how the Colorado Supreme Court has described the interplay between discretionary and mandatory parole in Colorado. *See, e.g.*, *Diehl v. Weiser*, 2019 CO 70, ¶ 3 ("Diehl was released from prison at the discretion of the state board of parole on August 16, 2011, and he immediately began serving a five-year period of mandatory parole."); *People v. Norton*, 63 P.3d 339, 343 (Colo. 2003) ("Under the [1993] system, the length of the parole term is no longer related to the unserved remainder of the sentence to confinement. Instead, all class two through six felons are subject to a mandatory period of parole *when their period of incarceration terminates* (either by its natural expiration or *as a result of an early release decision* by the parole board)." (emphasis added) (citation omitted)); *Craig v. People*, 986 P.2d 951, 958 (Colo. 1999) ("An offender is subject to mandatory parole following discharge from imprisonment regardless of whether such discharge is through some form of early release under the auspices of the state board of parole, or as the result of the offender having served the entire period of confinement." (citation omitted)). And this interpretation complies with the facts of this case—the Board's release notice states that it granted Sutton discretionary parole and that his sentence type was a three-year mandatory period of parole. Response to Order to Show Cause, *Sutton v. Burtlow*, No. 18-cv-01815-RM (D. Colo. Jan. 07, 2019), ECF No. 17-2.

So contrary to the district court and magistrate judge's conclusions, when the Board paroled Sutton, his mandatory period of parole—three years per section 18-

11

1.3-401(1)(a)(V)—immediately commenced. Sutton now claims that the Board should have credited toward that three-year period the time it deferred in granting him discretionary parole. In other words, had the Board granted him parole in August 2017 rather than in October 2018 (as he claims it should have), Sutton argues he could now trim fourteen months off his thirty-six-month mandatory period of parole. If Sutton is entitled to such relief, then a favorable order "would affect the duration of his distinct [parole] period." *Aragon*, 144 at 692 n.4. And if Sutton is correct, such a favorable order would "have some effect in the real world." *Prison Legal News*, 944 F.3d at 880 (internal quotation marks omitted) (quoting *Brown*, 822 F.3d at 1165–66). Accordingly, we conclude that reasonable jurists could debate whether the district court's mootness ruling is correct.

**III.    Sutton Has Not Made a Substantial Showing of the Denial of a Constitutional Right.**

Having successfully shown a debatable procedural error, Sutton must now make a substantial showing of the denial of a constitutional right. Neither the magistrate judge nor the district court addressed the merits of Sutton's due-process claim; therefore, "our review is limited." *Gibson v. Klinger*, 232 F.3d 799, 802–03 (10th Cir. 2000). Rather than a comprehensive review, "[w]e will only take a 'quick' look at the federal habeas petition to determine whether Mr. [Sutton] has 'facially allege[d] the denial of a constitutional right.'" *Id.* at 803 (final alteration in original) (quoting *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000)).

12

Sutton's habeas petition alleges that the Board violated his Fourteenth Amendment right to due process. To elucidate on that, in his objection to the report and recommendation, Sutton alleges that the Board "t[ook] back the grant" of "'property' it had given [him] for good behavior." R. at 51. He also claims that the Board deprived him of "liberty" by not "compensating the 14 months extra [he] spent in prison . . . to [his] 3 year mandatory parole period." *Id.*

A facially valid procedural-due-process claim[7] is comprised of two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014) (citing *Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1256 (10th Cir. 2008); *Colo. Dep't of Pub. Health v. Bethell*, 60 P.3d 779, 786 (Colo. App. 2002)). As for the first element, the Court has emphasized that

---

[7] In Sutton's objection to the magistrate judge's report and recommendation, he claims that the Board's action "'Shocks the Conscience' of all 20 persons I told." R. at 51. By this language, Sutton could be raising a substantive-due-process claim: "The Supreme Court has found substantive due process violations where government action has infringed a 'fundamental' right without a 'compelling' government purpose, as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it '*shocks the conscience.*'" *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019) (emphasis added) (internal citations omitted). As this quote illustrates, however, the "shocks the conscience" test also entails a deprivation of life, liberty or property. *See, e.g.*, *id.*; *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018) (citing *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). And because Sutton cannot demonstrate such a deprivation, he cannot show that the Board denied him a constitutional right, irrespective of whether his claim falls under procedural or substantive due process. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("[B]ecause Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds." (collecting cases)).

13

"[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).

Liberty or property interests require more than "a unilateral hope"; they require "a legitimate claim of entitlement." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal quotation marks omitted) (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)). State law creates such an entitlement if "the asserted right to property or liberty is *mandated* by state law when specified substantive predicates exist." *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012) (citing *Roth*, 408 U.S. at 577; *Thompson*, 490 U.S. at 460). When the right is not mandated—that is, "if government officials may grant or deny it in their discretion"—there is no protected entitlement. *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1178 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979), the Court ruled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." And Colorado law does not supply such a right, either—under Colorado law, individuals have no vested property or liberty interest in acquiring discretionary parole. *See, e.g.*, Colo. Rev. Stat. Ann. § 17-22.5-403(7)(a) (West 2020) (vesting the Board with discretion to determine whether an offender should be granted

14

discretionary parole); *Beylik v. Estep*, 377 F. App'x 808, 812 (10th Cir. 2010) (unpublished) ("[T]he grant of parole is wholly discretionary under Colorado's statutory parole scheme and thus does not create a legitimate expectation of release on the part of Colorado state prisoners." (citing *Greenholtz*, 442 U.S. at 10–11)); *Nowak v. Suthers*, 2014 CO 14, ¶¶ 38–39 (explaining that discretionary parole "is a privilege, not a right," and that "the parole board has the ultimate discretion to grant or deny parole based on the totality of the circumstances, including but not limited to the factors set forth in section 17–22.5–404(4)" (citation omitted)).

Here, Sutton alleges that in August 2017, the Board granted him "parole pending approval of bed space." R. at 5. He alleges that because the Board then deferred finalizing his discretionary parole until October 2018, it deprived him of property and liberty interests. But Sutton had no property interest, under either federal or state law, in receiving discretionary parole. And if Sutton had no broad right to discretionary parole, then the Board's deferral of his discretionary-parole date cannot implicate a protected liberty or property interest—any right to receiving parole on a specific date would be simply a subset of the broader right to parole in general. The Board had complete discretion to decide when (or if) to parole Sutton, hence it had complete discretion to decide when his mandatory period of parole commenced. Accordingly, the Board did not deprive Sutton of a property or liberty interest by deferring his parole date, and his procedural-due process claim is thus facially invalid.

15

## CONCLUSION

We deny Sutton a certificate of appealability and dismiss this case because he has not made a substantial showing of the denial of a constitutional right. We grant his motion to proceed *in forma pauperis*.[8]

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[8] Sutton has provided a financial affidavit showing he could not prepay the filing fees, because he has no assets or income. He has also presented one nonfrivolous argument on appeal—namely, his argument against mootness. Thus, we rule that he is entitled to *in forma pauperis* status on appeal. *See Johnson v. Raemisch*, 763 F. App'x 731, 735 (10th Cir. 2019) (unpublished) (granting an *in forma pauperis* motion when the applicant was unable to pay the filing costs and raised "at least one nonfrivolous argument on appeal"). That said, Sutton must make partial payments until the filing fee is fully paid. 28 U.S.C. § 1915(b)(1)–(2).