FILED
United States Court of Appeals
Tenth Circuit

July 29, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

BERNARD JONES,

    Petitioner - Appellant,

v.

MARK FAIRBAIRN,

    Respondent - Appellee.

No. 25-1104
(D.C. No. 1:23-CV-02189-DDD)
(D. Colo.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Petitioner Bernard Jones, a state prisoner in the custody of the Colorado

Department of Corrections ("CDOC") proceeding pro se,[1] seeks a Certificate of

Appealability ("COA") to challenge the district court's denial of his 28 U.S.C. § 2241

petition for a writ of habeas corpus. We deny Mr. Jones's request for a COA, grant his

motion to proceed in forma pauperis ("IFP"), and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Because Mr. Jones proceeds pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## I.    BACKGROUND

Mr. Jones is serving three concurrent Colorado state sentences: (1) a sixty-four-year sentence for first-degree sexual assault in case number 97CR873, (2) a ninety-six-year sentence for repeated possession or sale of a schedule I/II controlled substance in the same case (97CR873), and (3) a life sentence for a second-degree controlled substance violation in case number 89CR3639.

In case number 89CR3639, the state district court concluded Mr. Jones should be given 2,211 days of presentence confinement credit ("PSCC"). And in 2018, on Mr. Jones's petition, a Colorado state court concluded he should be given 123 days of PSCC in case number 97CR873.

Mr. Jones alleges that the CDOC's Time Computation Department is required to deduct the combined PSCC from both cases—2,334 days—from that department's computation of his Parole Eligibility Date ("PED"). But the CDOC has refused, reasoning that because Mr. Jones is serving concurrent sentences, the combination of the two periods of PSCC would result in "duplicative credit" in contravention of state law. ROA at 241.

Separately, in December 2019, the CDOC informed Mr. Jones that his PED "had been increased by approximately eight (8) years[,] from November 30, 2022 to . . . November 30, 2030." *Id.* at 22. Before the recalculation, the CDOC had been calculating Mr. Jones's PED by treating his life sentence in case number 89CR3639 as the "governing sentence," and using that sentence's forty-year minimum incarceration term before parole eligibility to project his PED as November 10, 2022. *Id.* at 220. Under

2

his recalculated PED, however, the CDOC concluded that the appropriate sentence to guide the PED calculation was his ninety-six-year sentence in case number 97CR873. Because the ninety-six-year sentence is not parole-eligible until half of that time is served, the CDOC concluded that Mr. Jones was not eligible for parole until he had served at least forty-eight years, thereby extending his PED by eight years, to November 2030.

The CDOC "blam[ed]" the result of the PED recalculation on the Colorado Supreme Court's decision in *Executive Director of Colorado Department of Corrections v. Fetzer*, 396 P.3d 1108 (Colo. 2017) (hereinafter, "*Fetzer*"). ROA at 27. In *Fetzer*, the court rejected the CDOC's mechanistic application of Colorado's "one continuous sentence" statutory requirement in the context of multiple concurrent sentences, but deferred to the CDOC's "expertise and discretion" to devise and administer an appropriate PED computation "methodology" in such circumstances.[2] *Fetzer*, 396 P.3d at 1112–14; *see* Colo. Rev. Stat. § 17-22.5-101 ("For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence.").

After presenting his claims regarding the constitutionality of the CDOC's calculation of his PED to the Colorado state courts without success, Mr. Jones initiated the instant habeas proceeding. In February 2024, Mr. Jones filed the operative amended

---

[2] Before the district court, the CDOC explained that it interpreted *Fetzer* to require it to "dramatically change the way it calculated parole eligibility dates, requiring the recalculation of hundreds, if not thousands, of offenders' sentences." ROA at 237.

habeas petition, asserting that the CDOC's refusal to deduct an additional 123 days of PSCC from his PED violated his Fourteenth Amendment procedural due process and equal protection rights. The petition further asserted that the CDOC's 2019 recalculation of his PED was undertaken pursuant to an agency-enacted rule that violated the Ex Post Facto Clause, or alternatively that the CDOC recalculated his PED pursuant to the *Fetzer* decision, and the retroactive application of that decision to his PED violated due process protections.

In March 2024, the district court directed the Respondent—Mark Fairbairn, the warden of the facility at which Mr. Jones is imprisoned—to show cause why Mr. Jones's § 2241 petition should not be granted. Mr. Fairbairn responded that (1) Mr. Jones's due process claims should be denied because he has no "liberty interest in discretionary release to parole," (2) Mr. Jones's Ex Post Facto claim fails because the CDOC's recalculation of his PED pursuant to *Fetzer* amounted to a mere "correction of a misapplied existing law" that does not violate Ex Post Facto prohibitions, and (3) Mr. Jones's equal protection allegations did not establish that he is "similarly situated" to persons he claims are receiving more favorable PED calculations. ROA at 240–41, 243–44, 246.

In February 2025, the district court denied Mr. Jones's petition. As to the due process claims, the district court concluded that because "Colorado does not create a liberty interest in parole itself, Mr. Jones 'has no subsidiary liberty interest in the process used to determine his PED, even if that process involves a nondiscretionary calculation.'" ROA at 278 (quoting *Fetzer v. Raemisch*, 803 F. App'x 181, 184 (10th Cir. 2020)

4

(unpublished)). As to Mr. Jones's Ex Post Facto claim, the court concluded that the CDOC's post-*Fetzer* methodology for PED computation was foreseeable and thus not violative of the Ex Post Facto Clause. Finally, the district court rejected Mr. Jones's equal protection claims on grounds that his petition did not make the threshold showing "that he . . . or any other state offender[] are similarly situated for purposes of calculating each offender's PED." *Id.* at 292. The court further denied Mr. Jones a COA.

## II.      ANALYSIS

### A.      *Jurisdiction: Certificate of Appealability*

Before we may exercise jurisdiction over this matter, Mr. Jones must obtain a COA. *See* 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."); *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) ("[T]his court reads § 2253(c)(1)(A) as applying whenever a state prisoner habeas petition relates to matters flowing from a state court detention order. This includes . . . challenges related to the incidents and circumstances of any detention pursuant to state court process under § 2241.").

Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." To satisfy this standard, the applicant must "show [] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

5

proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

We analyze each alleged constitutional violation through the requisite COA prism below.

### 1.      Mr. Jones's procedural due process claims

Mr. Jones first seeks a COA to challenge the district court's resolution of his procedural due process claims, which the district court rejected on grounds that Colorado state law creates no protected liberty interest in discretionary parole.

Under the Due Process Clause of the Fourteenth Amendment, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The procedural protections of the Due Process Clause are implicated only when one of the enumerated "interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Relevant here, a liberty interest that implicates procedural due process protections "may arise from an expectation or interest created by state laws or policies." *Id.*

In seeking a COA on his procedural due process claims, Mr. Jones focuses almost exclusively on the correctness of a Colorado state court's conclusion that under the relevant Colorado law, he "is not entitled . . . to have the CDOC add his PSCC together and deduct the sum from his concurrent sentences in both cases." ROA at 170–71. But we may not wade into this purely state law issue, because the Supreme Court has "repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). And in any event,

habeas petitioners cannot vindicate alleged violations of state law unless they give rise to a violation of federal rights. *See* 28 U.S.C. § 2241(c)(3).

Mr. Jones further argues, more pertinently, that because the Colorado statute governing the administration of PSCC imposes mandatory obligations on the CDOC—as evidenced by the statute's use of "shall"—it has removed any discretion on the CDOC's part and thus amounts to a state-created protected liberty interest. *See* Colo. Rev. Stat. § 18-1.3-405. Setting aside that the statute is entirely silent on the operation of multiple periods of PSCC across multiple concurrent sentences, Mr. Jones fundamentally confuses the process he seeks—a correct PED as governed by the PSCC regime and the "one continuous sentence" requirement—with the alleged liberty interest at issue: an entitlement to parole.

Focusing on the alleged absence of discretion surrounding PED calculation, Mr. Jones does not explain how reasonable jurists could debate the district court's conclusion that Colorado prisoners have no protected right to a correct PED calculation for the simple reason that the actual liberty interest at issue—parole—is *entirely* discretionary and thus does not create a legitimate claim of entitlement. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Beylik v. Estep*, 377 F. App'x 808, 812 (10th Cir. 2010) (unpublished) ("[T]he grant of parole is wholly discretionary under Colorado's statutory parole scheme and thus does not create a legitimate expectation of release on the

part of Colorado state prisoners.");[3] *Nowak v. Suthers*, 320 P.3d 340, 348 (Colo. 2014) ("The grant of parole is a privilege, not a right."). Mr. Jones has thus not established his entitlement to a COA for his procedural due process claims.

## 2.    Mr. Jones's equal protection challenges

Next, Mr. Jones seeks a COA for his equal protection claims, which allege generally that the CDOC has computed the PED for "a Jewish inmate[]" differently, and more favorably, than its PED computation for him, "an African-American." ROA at 219. The district court denied the claim on grounds that Mr. Jones had not made the threshold showing that he and the comparator inmate were "similarly situated for purposes of calculating each offender's PED." ROA at 292.

In seeking a COA for these claims, Mr. Jones argues that the "only similar circumstance that Mr. Jones must show is that both he and [the Jewish inmate] are inmates in CDOC." Opening Br. at 11. Mr. Jones cites no authority for this proposition, and it is not debatable among reasonable jurists that Mr. Jones's equal protection claims require a similarity of circumstances well beyond identity-of-custodian. Specifically, given the many legitimate, nondiscriminatory reasons an inmate's PSCC and PED computation could differ from Mr. Jones's, his equal protection claim cannot survive in the absence of a threshold showing that he and his comparator are "similarly situated" along all nondiscriminatory criteria that affect the PSCC and the computation of PEDs. *See* ROA at 176–77 ("[T]he circumstances of some inmates' sentences and presentence

---

[3] We cite unpublished decisions for their persuasive value only as they are not binding precedent. 10th Cir. R. 32.1(A).

confinement may warrant that the CDOC deduct multiple awards of PSCC from those inmates' multiple, concurrent sentences. But this is not the case for every inmate."). Mr. Jones is thus not entitled to a COA for his equal protection claims.

### 3.     Mr. Jones's ex post facto/retroactivity due process claim

Finally, Mr. Jones seeks a COA to appeal his claim that the CDOC's 2019 recalculation and extension of his PED violated protections against the retroactive application of judicial constructions of criminal law or Ex Post Facto prohibitions on agency-enacted legislative rules.

The United States Constitution prohibits states from "pass[ing] any . . . ex post facto Law." U.S. Const. art. I, § 10. Among other things, the Ex Post Facto Clause prohibits states from enacting retroactive parole statutes that increase a prisoner's sentence compared to the parole law in effect when the prisoner committed his crime. *See Garner v. Jones*, 529 U.S. 244, 250 (2000). While the Ex Post Facto Clause itself limits only legislative action, "an agency regulation which is legislative in nature is encompassed by" the Ex Post Facto prohibition. *Smith v. Scott*, 223 F.3d 1191, 1193–94 (10th Cir. 2000).

Courts, however, are not constrained by the Ex Post Facto Clause. *See Marks v. United States*, 430 U.S. 188, 191 (1977) ("The Ex Post Facto Clause . . . does not of its own force apply to the Judicial Branch of government.") But "the Supreme Court has held that in certain limited circumstances the retroactive application of a judicial decision interpreting criminal law can violate the Due Process Clause." *United States v. Budder*, 76 F.4th 1007, 1012 (10th Cir. 2023). The Court instructs that this due process right is

violated only when "a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)).

The district court construed Mr. Jones's petition as asserting alternative retroactivity theories: (1) that the Colorado Supreme Court's *Fetzer* decision may not be retroactively applied to extend his PED, or (2) that the CDOC, independent of *Fetzer*, devised a new PED "calculation methodology" that may not be retroactively applied to extend his PED. ROA at 279–90. Mr. Jones's first theory—focused on *Fetzer*—implicates the right to be free from retroactive application of a judicial interpretation of criminal laws, which inheres in the Due Process Clause, not the Ex Post Facto Clause. *See Lustgarden v. Gunter*, 966 F.2d 552, 553–54 (10th Cir. 1992). His second theory—necessarily premised on an implicit assertion that the CDOC's new PED computation methodology amounts to a legislative rule—arises under the Ex Post Facto Clause. *See Smith*, 223 F.3d at 1193–94.

As to Mr. Jones's theory that the CDOC has implemented a legislative rule, the district court concluded it was bound by the Colorado state court's conclusion that the *Fetzer* decision itself indeed required the CDOC's recalculation of his PED. Because *Fetzer* mandated the CDOC's methodology, the state court found irrelevant Mr. Jones's "underlying assumptions that the CDOC's policy of calculating PEDs after *Fetzer* is a 'law' potentially subject to the ex post facto prohibition." ROA at 173 n.2. In seeking a COA here, Mr. Jones vigorously disputes the state court's legal conclusion that *Fetzer*

10

mandated his recalculated PED,[4] but he makes no argument that the district court erred by applying the state court's Colorado law conclusion to foreclose his Ex Post Facto claim. He thus has not established his entitlement to a COA on his Ex Post Facto claim premised on the existence of a CDOC-adopted policy that is legislative in nature.

As to the *Fetzer* theory governed by the Due Process Clause, the district court discerned no retroactivity defect because "*Fetzer*'s interpretation of the one continuous sentence requirement . . . was not unexpected and indefensible based on the plain language of the statute and prior Colorado Supreme Court cases interpreting the same." *Id.* at 287.

Mr. Jones's arguments in support of a COA for this theory are difficult to trace, but he appears to assert that (1) the district court wholly failed to apply the legal standard that governs the retroactive application of judicial decisions construing state law, and (2) the district court failed to survey pre-*Fetzer* precedent of the Colorado Supreme Court for purposes of the "unexpected and indefensible" analysis. Mr. Jones is wrong on both counts: the district court in fact recited and applied the "unexpected and indefensible" standard that he claims was absent from the order, and because that standard necessarily requires a review of judicial precedent as it existed before *Fetzer*, the court devoted several pages to an analysis of pre-*Fetzer* Colorado Supreme Court precedent. *See* ROA

---

[4] Neither this court nor the district court can review the state court's interpretation of Colorado precedent. *See Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (alteration in original) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991))).

at 284–87. Because these assertions are unfounded, and because Mr. Jones does not otherwise show that reasonable jurists could debate the district court's conclusion that *Fetzer* did not announce an unexpected or indefensible rule, he is not entitled to a COA on this claim.

### B.    Mr. Jones's IFP Motion

Finally, we turn to Mr. Jones's IFP motion. ECF No. 12. To proceed IFP, Mr. Jones must "show a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991). Mr. Jones's motion establishes his inability to pay the filing fees, and although his arguments in pursuit of a COA do not carry the day, we conclude that he has presented a "reasoned, nonfrivolous argument" in this matter; we therefore grant Mr. Jones's IFP motion. ECF No. 12.

### III.    CONCLUSION

For the reasons above, we DENY Mr. Jones's request for a COA, GRANT his IFP motion, and DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge